UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
 DANIELLE JOYCE,                       :
                                       :
                        Plaintiff,     :        19cv6244 (DLC)
                                       :
              -v-                      :        OPINION AND ORDER
                                       :
 REMARK HOLDINGS, INC., f/k/a REMARK   :
 MEDIA, INC., BIKINI.COM, LLC, KAI-    :
 SHING TAO, and SHANNON FOLLANSBEE     :
                                       :
                        Defendants.    :
                                       :
-------------------------------------- X

APPEARANCES:

For plaintiff Danielle Joyce:
The Liddle Law Firm PLLC
1177 Avenue of the Americas
Ste 5th Floor
New York, NY 10036

Walker Green Harman, Jr.
The Harman Firm LLP
224 Fifth Avenue
Suite H211
New York, NY 10001

For defendants Remark Holdings, Inc., Bikini.com, LLC Kai-Shing
Tao, and Shannon Follansbee:
Amelia Hochman
Katelyn Jeanne Patton
Kerrin Teneyck Klein
Michael John Passarella
Olshan Frome Wolosky LLP
1325 Avenue of the Americas
New York, NY 10019

1

DENISE COTE, District Judge:

Danielle Joyce has brought an employment discrimination action against her former employer and two individual defendants.  The defendants have moved for partial summary judgment.  That motion is granted for the following reasons.

**Background**

The following facts are taken from the parties' submissions, and are undisputed unless otherwise stated.  Joyce worked from March 2017 to January 2019 at defendant Bikini.com LLC ("Bikini"), a subsidiary of defendant Remark Holding, Inc. ("Remark"), both of which are headquartered in Las Vegas, Nevada.  Joyce worked remotely from her home in Manhattan with the title Manager, Marketing and Brand Communications. Defendant Kai-Shing Tao is the Chairman and Chief Executive Officer of Remark.  Defendant Shannon Follansbee was Remark's Human Resources Executive.

Most of the plaintiff's complaints concern her interactions with Follansbee.  Joyce had many fewer interactions with Tao. She describes the following interactions with him.  A man she was dating in 2106 introduced her to Tao at a dinner in late 2016.  On March 2, 2017, she contacted Tao to apply for the position of Social Media Manager.  During a telephone call with

Tao, he invited her to visit Las Vegas to experience a typical day in their offices.  That trip occurred on March 16, and Follansbee offered Joyce a job on March 21.

During another trip to Las Vegas later in March, Joyce and Tao were among those who attended a birthday party for a member of Remark's board of directors (the "Director").  At a lunch with Tao and Follansbee the following day, Follansbee asked Joyce to describe what a model who had attended the birthday party had told her (the "Model").  The Model had described her unhappiness at being invited to an event for the Director since he had sexually assaulted her in his hotel room some months earlier.  At the party, the Director paraded the Model around the room, praising her buttocks.  Tao laughed and said that sounded like the Director.  Tao did not reprimand Follansbee when she made cynical remarks about models and their motives in dealing with wealthy men.

Joyce returned to Las Vegas in August 2017 to attend a board meeting.  She attended a large dinner party hosted by Tao that evening, after which the group went to a night club.  Soon thereafter, Joyce requested and got permission to return to New York early.

3

On November 2, six women accused the Director of sexual
assault and harassment.  On November 8, Tao hosted a team
meeting to discuss the allegations.  Tao reported that the
Director had offered to step down but that he had refused to
accept the Director's resignation, saying "I need to see it in
front of me for it to be proven."  When Tao asked Joyce if she
wanted to say something in front of the group, she asked to
speak with him privately.

At a private call with Tao, Tao explained that he
considered the Director a friend and that he hadn't brought the
Director "girls."  Rao added that there had to be "more
evidence, regardless of the employee" for sexual harassment
claims.  He added that the Director was an easy target.  When
Joyce explained at length why Tao should remove the Director
from the Board since he had the power to remove a man who made
female employees feel uncomfortable, Tao refused to change his
mind or accept the Director's resignation.

On July 12, 2018, Remark flew its employees to Miami,
Florida for Miami Swim Week.  At an after-party one night, Tao
gave his credit card to a female friend who bought a round of
shots.  Tao made Joyce take a full mixed drink.

On January 7, 2019, Joyce was told in a telephone call that the company needed to cut public relations staff and that she would be laid off.  By that time, Joyce estimates she was spending approximately 60% of her time on e-commerce and only 10% on public relations.

On July 3, 2019, Joyce filed this lawsuit, alleging that the defendants had created a hostile work environment and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and New York City's Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 et seq.  The plaintiff also brings causes of action against Follansbee for slander and tortious interference in business relations.  The plaintiff filed an amended complaint ("FAC") on December 20, 2019.

On April 1, 2021, the defendants moved for partial summary judgment.  The FAC pleads six causes of action.  The defendants do not seek summary judgment on the hostile work environment claims exception to the extent such a claim is brought against Tao.  They also seek summary judgment on the retaliation claims, the claim of slander, and the claim of tortious interference in

5

business relations.  Joyce does not oppose dismissal of the latter two claims.[1]

## Discussion

The defendants have moved for summary judgment on the plaintiff's retaliation claims brought under Title VII and the NYCHRL, and the plaintiff's hostile work environment claim brought under the NYCHRL against Tao.  For the following reasons, the motion is granted.

Summary judgment may be only be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "To present a genuine issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence such that a reasonable jury could return a verdict for the nonmoving party." Horror Inc. v. Miller, 15 F.4th 232, 241 (2d Cir. 2021) (citation omitted).  Material facts are those facts that "might affect the outcome of the suit under the governing law."  Choi

---

[1] The majority of the plaintiff's opposition to the motion for summary judgment is addressed to the claims on which the defendants did not seek summary judgment, that is the claims of hostile work environment created by Follansbee.  This Opinion addresses only those claims on which the defendants have moved for summary judgment.

v. Tower Rsch. Cap. LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation
omitted).  In considering a motion for summary judgment, a court
"construe[s] the facts in the light most favorable to the non-
moving party and must resolve all ambiguities and draw all
reasonable inferences against the movant."  Kee v. City of New
York, 12 F.4th 150, 158 (2d Cir. 2021) (citation omitted).

In the context of employment discrimination, "an extra
measure of caution is merited" in granting summary judgment
because "direct evidence of discriminatory intent is rare and
such intent often must be inferred from circumstantial evidence
found in affidavits and depositions."  Schiano v. Quality
Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006) (citation
omitted).  See also Walsh v. New York City Hous. Auth., 828 F.3d
70, 74 (2d Cir. 2016).  Nonetheless, "[e]ven in the
discrimination context . . . a plaintiff must provide more than
conclusory allegations to resist a motion for summary judgment."
Delaney v. Bank of Am. Corp., 766 F.3d 163, 170 (2d Cir. 2014)
(citation omitted).

I.   Retaliation

Joyce brings claims of retaliation against the corporate
defendants under Title VII and against all defendants under the
NYCHRL.  She asserts that she protested conduct that violated

7

Title VII on three occasions and that in retaliation many of her
job responsibilities were reassigned and her employment was
terminated.

Title VII makes it unlawful for an employer "to
discriminate against any employee of his [or her] employees
because he [or she] has opposed any practice made an unlawful
employment practice by other provisions of Title VII." Lenzi v.
Systemax, Inc., 944 F.3d 97, 112 (2d Cir. 2019) (citation
omitted). Retaliation claims are analyzed according to the same
burden-shifting approach applicable to other discrimination
claims under McDonnell Douglas Corp. v. Green, 411 U.S. 792
(1973). See Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 843
(2d Cir. 2013).

To make out a prima facie retaliation case, the plaintiff
"must show that (1) [s]he was engaged in protected activity, (2)
the employer was aware of that activity, (3) the employee
suffered a materially adverse action, and (4) there was a causal
connection between the protected activity and that adverse
action." Agosto v. New York City Dep't of Educ., 982 F.3d 86,
104 (2d Cir. 2020) (citation omitted). Once the plaintiff has
established a prima facie case, "the burden shifts to the
employer to articulate some legitimate, non-retaliatory reason

8

for the employment action." Zann Kwan, 737 F.3d at 845.  If the defendant does so, the plaintiff must then show that this "non-retaliatory reason is a mere pretext for retaliation."  Id.

The NYCHLR prohibits "retaliat[ion] or discriminat[ion] in any manner against any person because such person has . . . opposed any practice forbidden under this chapter."  N.Y.C. Admin. Code § 8-107(7).  "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir. 2013) (citation omitted).  "[C]ourts must analyze NYCHRL claims separately and independently from any federal . . . claims," because the NYCHLR is to be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."  Id. at 109 (citation omitted).

A.   Protected Activity

In opposing the motion for summary judgment, Joyce identifies three occasions on which she contends she engaged in

protected activity.  None of these constitutes protected activity.

An employee's complaint "may qualify as protected activity" under Title VII "so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law."  Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (citation omitted). "Informal protests of discrimination" can constitute protected activity.  Summa v. Hofstra Univ., 708 F.3d 115, 127 (2d Cir. 2013) (citation omitted).  The employee's "subjective good faith belief," however, is not enough; that belief must be "reasonable and characterized by objective good faith."  Kelly, 716 F.3d at 16 (citation omitted).

Joyce claims that she first engaged in protected activity during a conversation with Follansbee in April 2017 while on a trip to Las Vegas.  The day after the birthday party for the Director, Joyce shared with Follansbee what the Model had told her about the Director sexually harassing the Model six months earlier in his hotel room.  Sharing the Model's confidence is neither a complaint nor a protest about activity at Joyce's place of employment, nor could it reasonably have been understood as such.  Accordingly, Joyce's employer could not

"reasonably have understood" that she was "oppos[ing] . . . conduct prohibited by Title VII." Id. at 15 (citation omitted).

Joyce next contends that she engaged in protected activity on November 8, 2017, during a telephone call with Tao that followed a general meeting with employees. As alleged by Joyce, after public accusations of sexual harassment were made against the Director, Follansbee held a general meeting to address sexual misconduct in the workplace. During that meeting, Follansbee shared her own experience of misconduct and advised women employees to be assertive, speak up, and reject inappropriate behavior. Then, Joyce reported to Tao that Follansbee added "And if you speak up and you lose your job about it, well, there's always another job."[2]  In her telephone call with Tao that followed the meeting, Joyce complained to Tao that that was not an appropriate thing for Follansbee to say and that it was men who had the responsibility not to harass women, and men in positions of power had a responsibility to remove harassers from the workplace.

Joyce's complaint about Follansbee's formulation of her advice to employees was not protected activity. It was a

---

[2] The defendants dispute that Joyce has accurately recounted Follansbee's statements in the general meeting.

11

complaint about how an executive expressed herself in urging employees to report misconduct.  Joyce's complaint could not reasonably be understood as a protest about conduct that violated the laws forbidding employment discrimination.

Finally, Joyce asserts that a statement she made in her conversation with the Vice President of Digital Marketing ("VP") at the end of the July 2018 trip to Miami Swim Week was protected activity.  It is necessary to provide context to this assertion.  Joyce had three conversations with the VP and the alleged protected activity occurs at the end of the third.

In their first conversation, the VP called Joyce to discuss why Follansbee had ordered Joyce to leave Miami early.  The VP reviewed with Joyce the accusations that she had engaged in inappropriate conduct the evening before.  After that conversation, Joyce learned that Follansbee had instructed another employee ("Fellow Employee") not to associate with Joyce because Joyce had behaved badly.  Joyce then contacted the VP to accuse Follansbee of misbehaving the night before.

Then, in their third conversation, Joyce expressed dismay that the VP had already told Follansbee that the Fellow Employee was relating to others that she had been told not to associate with Joyce.  When the VP defended his decision to speak to

12

Follansbee, he explained that he had reporting requirements.
Joyce said, "Really?  What if I told you. . . ."  Joyce then
asked the VP if he would feel the need to report three different
things.  The third item is what Joyce identifies as protected
activity.

Joyce asked if the VP would be required to report that
Follansbee had been telling employees that Joyce had only been
hired at Bikini because her former boss, a friend of Tao's, was
tired of having sex with her.  According to Joyce, the VP
explained that he would not have to report any of these things
unless Joyce told him which employee was telling her these
things.

Joyce's dispute with the VP of Digital Marketing over his
views of his reporting obligations is not protected activity.
It could not reasonably be understood as a complaint about
activity prohibited by Title VII or the NYCHRL.

B.   Causation

Even if any of these three instances were protected
activity, the retaliation claim would have to be dismissed for
the plaintiff's failure to show that her statements caused an
act of retaliation.  For a retaliation claim to survive summary
judgment, the plaintiff must snow "a causal connection between

13

the protected activity" and the "adverse action" complained of.
Agosto, 982 F.3d at 104 (citation omitted).  Causation must be
proved "according to traditional principles of but-for
causation, which requires proof that the unlawful retaliation
would not have occurred in the absence of the alleged wrongful
action or actions of the employer."  Zann Kwan, 737 F.3d at 845
(quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338,
360 (2013)).  A plaintiff can sometimes establish causation "by
showing that the protected activity was closely followed in time
by the adverse [employment] action."  Id. at 845.  The Second
Circuit "has not imposed a strict time limitation when a
retaliation claim relies exclusively on temporal proximity."
Agosto, 982 F.3d at 104.  Nevertheless, "a gap of more than
several months is typically too long by itself to survive
summary judgment."  Id.

Here, the most recent purportedly protected activity Joyce
identifies is her discussion with the VP of Digital Marketing in
July 2018.  Joyce's employment, however, was not terminated
until six months after this conversation, in January of 2019.
Additionally, the previous communications Joyce contends were
protected activity took place in April and November of 2017,
well over a year before Joyce was fired.  This is too long a

temporal gap to establish causation for the purposes of summary judgment.  See Abrams v. Dep't of Pub. Safety, 764 F.3d 244, 254–55 (2d Cir. 2014) (finding that a 5-month gap was too long to establish causation by temporal proximity alone).

Joyce also claims that, after her conversation with the VP, her job responsibilities were reduced or shifted to other employees.  An employer's conduct may constitute unlawful retaliation when it "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 44 (2d Cir. 2019) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)).

The record does not support the inference that the reduction in Joyce's job responsibilities was intended to punish or discourage protected activity.  On the contrary, Joyce specifically asked that some of her job duties be taken off her plate, because she was feeling overworked.  Joyce has not offered evidence to raise a question of fact that the change in job responsibilities was caused by protected activity rather than her own requests.

C.   NYCHRL Retaliation Claim

For similar reasons, Joyce's retaliation claim brought
under the NYCHRL cannot survive summary judgment.  Even though
the NYCHRL is more solicitous of retaliation claims, a plaintiff
bringing a retaliation claim under the NYCHRL must still
demonstrate that "she took an action opposing her employer's
discrimination, and that, as a result, the employer engaged in
conduct that was reasonably likely to deter a person from
engaging in such action."  Mihalik, 715 F.3d at 112.  As
discussed above, Joyce cannot show that her actions could have
reasonably been understood as opposing unlawful discrimination,
nor can she show that any adverse conduct from her employer was
caused by those actions.  Accordingly, the defendants are
granted summary judgment on the plaintiff's NYCHRL retaliation
claim.

II.  Tao

Defendants also move for summary judgment on Joyce's claim
that Tao created a hostile work environment, in violation of the
NYCHRL.  Joyce had relatively little contact with Tao, and the
plaintiff's motion opposing summary judgment points to few
relevant interactions.  Accordingly, Joyce has not met her

16

burden in opposing this motion for summary judgment to show that Tao created a hostile work environment.

As already noted, discrimination claims brought under the NYCHRL are analyzed under a more liberal standard than claims brought under Federal law.  See Mihalik, 715 F.3d at 109. Employer conduct does not need to rise to the level of being severe and pervasive to violate the NYCHRL.  Id. at 110. Instead, a plaintiff "need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender."  Id.  Nevertheless, "the NYCHRL is not a general civility code," and the plaintiff must still demonstrate that the challenged conduct was "caused at least in part by discriminatory or retaliatory motives."  Id. at 113; see also Emamian v. Rockefeller Univ., 971 F.3d 380, 389 (2d Cir. 2020).

A.   Direct Liability

Joyce points to three specific instances to argue that Tao created a hostile work environment.  First, when Joyce spoke to Tao about the Director's sexual assault of the Model, Tao laughed and said that sounded like the Director.  Second, Tao told Joyce that he considered the Director a friend and had not

brought him "girls."  And third, Joyce claims that Tao forced her to take a mixed drink at a company event in a nightclub.

These incidents cannot sustain a hostile work environment claim under the NYCHRL.  Although Joyce may have preferred that Tao more actively address allegations of the Director's sexual misconduct, Tao's refusal do to so does not constitute unlawful discrimination against Joyce and did not create a hostile work environment for Joyce.  Joyce worked remotely, and the Director had no involvement in her work.  Courts interpreting the NYCHRL have generally refused to hold individual defendants liable for creating a hostile work environment unless the evidence shows that the claim "relates directly to the conduct and behavior of the individual."  Baez v. Anne Fontaine USA, Inc., 2017 WL 57858, at *5 (S.D.N.Y. Jan. 5, 2017) (citation omitted); see also Dillon v. Ned Mgmt., 85 F. Supp. 3d 639, 658 (E.D.N.Y. 2015).

Similarly, the single incident in which Tao forced Joyce to take a mixed drink does not give rise to a hostile work environment.  Joyce has not provided any evidence that Tao specifically or disproportionately pressured female employees to consume alcohol.  Joyce therefore has not shown that, during this incident, she was treated "less well . . . because of her

gender." Mihalik, 715 F.3d at 110.  And, again, Joyce worked
from her home and Tao had no role in supervising her work.

B.   Aiding and Abetting

Finally, perhaps recognizing that her interactions with Tao
were too limited to support a claim that Tao's own actions
created a hostile work environment, Joyce argues that her
hostile work environment claim against Tao should not be
dismissed because Tao aided and abetted the creation of a
hostile work environment.  Because this claim was raised for the
first time in opposition to the defendants' partial motion for
summary judgment, it need not be considered.  See Greenidge v.
Allstate Ins. Co., 446 F.3d 356, 361 (2d Cir. 2006) (holding
that a district court does not abuse its direction by refusing
to consider a claim raised for the first time in opposition to
summary judgment).  Nevertheless, even if the claim were timely,
it would fail on the merits.

The NYCHRL makes it "an unlawful discriminatory practice
for any person to aid, abet, incite, compel, or coerce the doing
of any of the acts forbidden under this chapter." N.Y.C. Admin.
Code § 8-107(6).  A person may be liable for aiding and abetting
discrimination under the NYCHRL if they are aware of

discrimination but fail to take any remedial action.  See Feingold v. New York, 366 F.3d 138, 158-59 (2d Cir. 2004).

Joyce's hostile work environment claim rests primarily upon the conduct of Follansbee.  Joyce describes at length her interactions with Follansbee that she contends created a discriminatory and hostile work environment.

Joyce argues that Tao aided and abetting the creation of a hostile work environment by failing to remedy discrimination by Follansbee and others.  As discussed above, however, none of Joyce's conversations with Tao could have reasonably been understood as complaints about unlawful discrimination.  Joyce has not offered any evidence that Tao was "aware" of any misconduct that he was obligated to investigate and correct. Cf. id., 366 F.3d at 158.

## Conclusion

The defendants' motion for partial summary judgment is granted.  All claims against Kai-Shing Tao and all retaliation claims are dismissed.


Dated:     New York, New York
           January 20, 2022

                                        _____
                                        DENISE COTE
                                        United States District Judge

20